# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SHANITA D. SWANSON, Natural ) | |
| Mother and  Administrator of the     ) | |
| Estate of Anthony J. Mitchell,          ) | |
| ) | |
| *Plaintiff,*                                     ) | Civil Action No: 1:21-cv-00996-CAP |
| ) | |
| V.                            ) | |
| ) | |
| FULTON COUNTY, GA, GRADY   ) | |
| EMS, LLC, JAMES LUSTER,          ) | |
| JEREMIAH WHITEHEAD,               ) | |
| WILLIAM ROBERTS,                      ) | |
| JAMES BAUMGARTNER                 ) | |
| JEREMY HOLLAND, JENNIFER     ) | |
| JONES, VICTORIA WHALEY,         ) | |
| DOUGLASS HARDNETT, and          ) | |
| DESMOND LOWE,                            ) | |
| ) | |
| *Defendants.*                ) | |

## <u>SECOND AMENDED COMPLAINT</u>

COME NOW Plaintiff, in the above-styled action and files this Second

Amended Complaint and demand for jury trial, pursuant to FED. R. CIV. P.

15(A)(2) and FED. R. CIV. P. 21, showing the Court the following:

## PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff, Shanita D. Swanson, is a resident of Fulton County, Georgia, and she is the natural mother, sole legal guardian, and Estate Administrator of Anthony J. Mitchell, deceased.

2.

Plaintiff intends to bring each and every claim permissible under Georgia law.  Plaintiff seeks all medical expenses, pain and suffering, and all compensatory, special, consequential, economic, general, and compensation for the value of the life of Anthony J. Mitchell, and other damages permissible under Georgia law.

3.

Defendant Fulton County, Georgia employs the Fulton County Police Officers involved in this case, and it is responsible for the funding and operation of the Fulton County Police Department.  Defendant Fulton County, Georgia may be served with process through Robb Pitts, Fulton County Commission Chairman at 141 Pryor Street SW10th Floor Atlanta, Georgia 30303, and is subject to the jurisdiction of this court.

4.

On April 10, 2020, Plaintiff gave ante litem notice to Fulton County, GA, and Plaintiff has complied with all conditions precedent to bringing this action against Fulton County, Georgia. (A copy of the ante litem notice is attached as Exhibit "A.")

5.

Defendant Grady EMS, LLC may be served through its registered agent, Timothy Jefferson, at 80 Jesse Hill Jr. Dr. SE, P.O. Box 26145, Atlanta, Georgia 30303, and is subject to the jurisdiction of this court.

6.

Defendant JAMES LUSTER, was a Captain with the City of South Fulton, GA Fire Department at all times relevant to this action, and he was involved with the care, of lack thereof, provided to decedent Anthony J. Mitchell, and is subject to the jurisdiction of this court.

7.

Defendant JEREMIAH WHITEHEAD, was a Sergeant with the City of South Fulton Fire Department at all times relevant to this action, and he was involved with the care, of lack thereof, provided to decedent Anthony J. Mitchell, and is subject to the jurisdiction of this court.

8.

Defendant WILLIAM ROBERTS, was a Firefighter with the City of South Fulton Fire Department at all times relevant to this action, and he was involved with the care, of lack thereof, provided to decedent Anthony J. Mitchel , and is subject to the jurisdiction of this court.

9.

Defendant JAMES BAUMGARTNER was an Advanced Emergency Medical Services Technician (AEMT) with Grady EMS, LLC at all times relevant to this action, and he was involved with the care, of lack thereof, provided to decedent Anthony J. Mitchell, and is subject to the jurisdiction of this court.

10.

Defendant JEREMY HOLLAND was a paramedic with Grady EMS, LLC, at all times relevant to this action, and he was involved with the care, of lack thereof, provided to decedent Anthony J. Mitchell, and is subject to the jurisdiction of this court.

11.

Defendant JENNIFER JONES was a police officer with Fulton County, Georgia at all times relevant to this action, committed excessive force against Anthony Mitchell and deliberate indifference to Anthony Mitchell's medical

condition in violation of the United States Constitution, and is subject to the jurisdiction of this court.

12.

Defendant VICTORIA WHALEY was a police officer with Fulton County, Georgia at all times relevant to this action, committed excessive force against Anthony Mitchell and deliberate indifference to Anthony Mitchell's medical condition in violation of the United States Constitution, and is subject to the jurisdiction of this court.

13.

Defendant DOUGLASS HARDNETT was a police officer with Fulton County, Georgia at all times relevant to this action, committed excessive force against Anthony Mitchell and deliberate indifference to Anthony Mitchell's medical condition in violation of the United States Constitution, and is subject to the jurisdiction of this court.

14.

Defendant DESMOND LOWE was a police officer with Fulton County, Georgia at all times relevant to this action, committed excessive force against Anthony Mitchell and deliberate indifference to Anthony Mitchell's medical condition in violation of the United States Constitution, and is subject to the jurisdiction of this court.

15.

Jurisdiction and venue are proper as to the Northern District of Georgia.

## **FACTUAL SUMMARY**

16.

Anthony Mitchell was a 19-year-old male with Autism on November 16, 2019.

17.

On November 16, 2019, Anthony Mitchell arrived to the Bojangles Restaurant located at 5628 Fulton Industrial Blvd. SW, Atlanta, GA 30336 to have a meal.

18.

While dining at the restaurant, Anthony Mitchell was taunted by Bojangles Restaurant employees.

19.

As a result of being a taunted, a confrontation ensued between the Anthony Mitchell and the restaurant employees.

20.

On November 16, 2019, law enforcement agency representatives responded to a call for service for an irate customer inside Bojangles Restaurant located at 5628 Fulton Industrial Blvd. SW, Atlanta, GA 30336.

21.

The first Fulton County Police Department (FCPD) officer arrived at the business at approximately 2139 hours.

22.

Upon arrival, the officer observed Anthony Mitchell, a 19-year-old male with Autism, sitting against the outside of the restaurant, with obvious traumatic injuries to his face.

23.

Upon review of the video surveillance footage from Bojangles Restaurant, Mr. Mitchell was involved in an altercation with employees of the restaurant beginning at 2130 hours.

24.

The altercation escalated into a physical fight between Mr. Mitchell and at least 5 employees of the restaurant.

25.

The physical fight resulted in obvious injuries to Mr. Mitchell's face and head according to FCPD officers.

26.

Mr. Mitchell was bleeding from the mouth as a result of the fight.

27.

Additional officers arrived to the scene and then restrained Mr. Mitchell in handcuffs with his arms behind his back, tied a Bojangles apron around his face (which appeared to be a modified hood) and pressed a police officer's knee into Mr. Mitchell's back, while Mr. Mitchell was inside the restaurant.

28.

The police officers moved Mr. Mitchell to the parking lot at approximately 2146 hours.

29.

The officers then walked Mr. Mitchell out of the restaurant, bypassed a police vehicle that Mr. Mitchell could have been placed in, walked Mr. Mitchell through the parking lot and put Mr. Mitchell on the concrete ground in a prone position with an officer's knee in Mr. Mitchell's back AGAIN, with the apron still tied across his face.

30.

The officer's knee in Mr. Mitchell's back compromised Mr. Mitchell's breathing and contributed to his death.

31.

The other officers watch the officer place a knee in the back for a prolong period of time and did not intervene.

32.

At 2158 hours, , the City of South Fulton County Fire Department (FCFD) Engine 13 staffed by Captain James Luster, Sergeant Jeremiah Whitehead and Firefighter William Roberts, were dispatched to the restaurant to treat Mr. Mitchell and arrived on scene of the subject event at 2203 hours.

33.

Upon arrival on scene, Captain Luster, Sergeant Whitehead and Firefighter Roberts, found Mr. Mitchell in the prone position in the parking lot of the business.

34.

Captain Luster, Sergeant Whitehead and Firefighter Roberts, noted that Mr. Mitchell was the victim of a possible assault and had incurred traumatic injuries, including bleeding they could see.

35.

Based on the information available to Engine 13 personnel, Mr. Mitchell was a patient with obvious injuries at the time Captain Luster, Sergeant Whitehead and Firefighter Roberts arrived on scene.

36.

Captain Luster recorded in the incident report that they discussed Mr. Mitchell's presentation and negotiated with the FCPD officers to leave the scene

without providing Mr. Mitchell with any emergency medical assessment, emergency medical treatment, or emergency medical transportation.

37.

Captain Luster, Sergeant Whitehead and Firefighter Roberts did not record any of the information related to the subject event in the appropriate medical legal reporting format indicated for prehospital emergency medical services patients like Mr. Mitchell.

38.

Therefore, the incident report created by Captain Luster represents the only documentation of the encounter with Mr. Mitchell related to the subject event and the Engine 13 personnel.

39.

The separation of the patient/caregiver relationship between Mr. Mitchell and Captain Luster, Sergeant Whitehead and Firefighter Roberts took place when they left the scene and Mr. Mitchell was left lying on the ground in the parking lot.

40.

Based on their incident report, Engine 13 departed the scene at 2207 hours which means the total time Captain Luster, Sergeant Whitehead and Firefighter Roberts spent on scene was 4 minutes.

41.

Approximately 13 minutes after the departure of Captain Luster, Sergeant Whitehead and Firefighter Roberts, Grady Emergency Medical Services (Grady EMS) Ambulance Number 800, staffed by Advanced Emergency Medical Technician (AEMT) James Baumgartner and Paramedic Jeremy Holland, arrived on scene at 2220 hours, approximately 34 minutes after Mr. Mitchell was handcuffed and placed prone on the ground in the parking lot.

42.

The video surveillance from the restaurant parking lot shows the Grady EMS ambulance pull up to the location of the parked patrol vehicles.

43.

Grady EMS AEMT Baumgartner and Grady EMS Paramedic Holland are seen exiting the ambulance without any medical equipment and walking to the location of Mr. Mitchell and the police officers on scene.

44.

The video footage shows AEMT Baumgartner and Paramedic Holland of Grady EMS standing in the parking lot for several minutes, then returning to the ambulance, getting into the driver's seat and passenger seat, and leaving the scene.

45.

The Grady EMS ambulance departed the scene at 2207 hours, approximately 7 minutes after arriving at the restaurant.

46.

During their 7 minutes on scene, AEMT Baumgartner and Paramedic Holland of Grady EMS never performed the appropriate prehospital assessment of Mr. Mitchell's condition or traumatic injuries, never provided Mr. Mitchell with indicated medical treatment of his traumatic injuries, and never provided Mr. Mitchell with emergency medical transportation to the closest emergency department staffed and equipped to treat Mr. Mitchell's condition.

47.

Additionally, AEMT Baumgartner and Paramedic Holland of Grady EMS never completed any medical documentation about the call for service regarding Mr. Mitchell and his traumatic injuries.

48.

The separation of the patient/caregiver relationship between Mr. Mitchell and AEMT Baumgartner and Paramedic Holland of Grady EMS was never documented in a medical document, and Mr. Mitchell was once again left lying on the ground in the parking lot without any medical care when Grady EMS employees departed the scene.

49.

Mr. Mitchell's mother, Shanita Swanson, was contacted by FCPD officers on scene of the subject event.

50.

FCPD officers awaited on scene for Ms. Swanson to arrive at the restaurant to take her son home after the physical fight.

51.

Without any medical caregivers on scene, custody of Mr. Mitchell was transferred to his legal guardian, Ms. Swanson, and both drove back to their residence.

52.

Incident reports and medical records establish that Mr. Mitchell received care on November 17, 2019 from Grady Memorial Hospital, Grady EMS, and the City of South Fulton County Fire Department.

53.

Approximately 10 minutes after arriving home with Mr. Mitchell, Ms. Swanson went to check on Mr. Mitchell and found him unconscious and unresponsive in his bedroom.

54.

A 911 call for service was placed from Mr. Mitchell's residence at approximately 2307 hours.

55.

The units dispatched to the Mitchell residence were the same City of South Fulton County Fire Department Engine 13 personnel, Captain James Luster, and Sergeant Jeremiah Whitehead, Firefighter William Roberts, and Grady EMS Ambulance 800 employees AEMT James Baumgartner, and Paramedic Jeremy Holland.

56.

All the first responders listed above, were the same EMS personnel that responded to the initial subject event on November 16, 2019 at the Bojangles's Restaurant.

57.

Upon arrival at Mr. Mitchell's residence, Mr. Mitchell was in cardiac arrest and CPR was in progress by family members.

58.

According to the prehospital records, it took 10 minutes for the first EMS personnel to arrive on scene and they were Captain James Luster, and Sergeant

Jeremiah Whitehead, Firefighter William Roberts with the City of South Fulton County Fire Department.

59.

The Grady EMS ambulance with Grady EMS AEMT James Baumgartner and Grady EMS Paramedic Jeremy Holland did not arrive on scene at Mr. Mitchell's residence until 17 minutes after the initial dispatch.

60.

According to the Patient Care Report completed by Grady EMS Paramedic Holland regarding Mr. Mitchell, the Grady EMS employees made patient contact with Mr. Mitchell at 2327 hours; 20 minutes after the initial 911 call.

61.

At the time of patient contact, Mr. Mitchell was in cardiac arrest and had no detectable heart rhythm.

62.

Mr. Mitchell was treated by Grady EMS employees and the firefighters from City of South Fulton County Fire Department, which was similar to the Advanced Cardiac Life Support (ACLS) guidelines according to the Patient Care Report.

63.

During the course of treatment provided by Grady EMS Paramedic Holland for Mr. Mitchell's cardiac arrest event, there are three separate forms of

Intravenous (IV) access that were established during the treatment and transportation process.

64.

The total time Grady EMS AEMT James Baumgartner and Grady EMS Paramedic Jeremy Holland spent with Mr. Mitchell during the cardiac arrest event was 60 minutes.

65.

The Grady EMS Patient Care Report does not clarify the failures with respect to patient treatment and management, and failure to provide timely transportation to Mr. Mitchell based on the belief by the caregivers that Mr. Mitchell was suffering from a traumatic cardiac arrest event.

66.

Mr. Mitchell arrived at Grady Memorial Hospital at 0027 hours on November 17, 2019 still in cardiac arrest.

67.

According to hospital records, a Trauma Team was activated to manage Mr. Mitchell's care upon his arrival at the emergency department.  However, 4 minutes after arrival at the Grady Memorial Hospital Emergency Department, Mr. Mitchell was pronounced dead.

## COUNT I:

## Liability Under 42 USC § 1983 against Defendant Fulton County, GA for Unconstitutional Ministerial Policies which led to the death of Anthony J. Mitchell.

68.

The Fulton County, GA Police Department had established unconstitutional ministerial policies and procedures regarding treating Anthony J. Mitchell who was autistic physically injured when he was encountered by Fulton County, GA police officers.

69.

Fulton County Police Department failed to establish reasonable policies and procedures, including the training of officers in methods, techniques, and approaches designed to prevent the excessive use of force in responding to situations involving criminal suspects such as Anthony Mitchell who was autistic and physically injured when he was encountered by Fulton County, GA police officers.

70.

The violations of the generally accepted law enforcement custom and practice in this situation and the wrongful death of Mr. Mitchell were direct and foreseeable results clearly established and grossly inadequate supervisory and

17

training policies and practices on the part of Fulton County.  Fulton County failed to train their employees on how to properly restrain a mentally disturbed person who was also physically injured.

71.

The policies of Defendant Fulton County permitted the police officers to act with deliberate indifference to Mr. Mitchell's constitutional rights.

72.

These actions of Fulton County, GA police officers were pursuant to  Fulton County policy, custom and procedures that were calculated to and did deprive Mr. Mitchell of rights and privileges protected by state and federal law, including 42 USC § 1983.

73.

The following Fulton County Police Department's ministerial policies were with deliberate indifference to Anthony Mitchell's Fourth, Eighth and Fourteenth Amendment Rights, and led to Mr. Mitchell's death:

A.     Fulton County, GA failed to adequately hire, supervise and retain their officers who encountered Anthony Mitchell;

B.     Fulton County, GA failed to adequately train their officers to employ safe, reasonable and necessary techniques designed to prevent the

encounter with Anthony Mitchell from becoming volatile or dangerous to Mr. Mitchell.

C.     Fulton County, GA failed to adequately train their deputies to employ safe, reasonable and necessary techniques designed to prevent encounters with autistic and physically injured persons;

D.     Fulton County, GA failed to adequately train their deputies in the safe, reasonable, effective, and appropriate modalities and measures of force to be used upon Impaired Persons.

E.     Fulton County Police Department permitted a custom of excessive force by permitting its officers to place a knee in the back of Anthony Mitchell for an extended period of time while he was physically injured.

F.      Fulton County, GA Police Department have policies that permitted the officers to ignore the need for proper medical attention for Mr. Mitchell while he was having a mental health crisis and while he was Physically injured in clear violation of established Constitutional principles and case law;

74.

The policies of the Fulton County, GA Police Department were deliberately

indifferent to the Fourth, Eighth and Fourteenth Amendment Rights of Anthony Mitchell, and were the moving force which led to and caused the death of Mr. Mitchell, in violation of clearly established case law.

75.

Fulton County, GA Police Department's deliberate indifference to the Fourth, Eight and Fourteenth Amendment Rights of Impaired Persons through their failure or failures to train as alleged above are failures of policy, widespread practice, and/or custom.

76.

Fulton County, GA's systematic training failure or failures as alleged above proximately caused Anthony Mitchell's death in that they proximately, directly and foreseeably caused the officers to use force that was foreseeably ineffective at subduing him, instead of safely gaining control of him or simply waiting for him to tire or calm down.

77.

Upon Information and belief Fulton County Police Department knew of, ratified and/or condoned the conduct described herein.

78.

Due to the systematic, unconstitutional training practices or policies alleged

herein, Fulton County, GA is liable for the Plaintiff's damages.

## COUNT II:

## Action Pursuant to 42 USC § 1983 in violation of the 4th and 14th Amendments of the United States Constitution For Excessive Force against Defendants Jennifer Jones, Victoria Whaley, Douglas Hardnett and Desmond Lowe

79.

Officers Jones, Whaley, Hardnett and Lowe used unreasonable and excessive force against Anthony Mitchell by placing a knee in the back of Anthony Mitchell (or by standing by and permitting a fellow officer to place a knee in the back of Anthony Mitchell) for a prolonged period of time which compromised Mr. Mitchell's breathing and contributed to his death.

80.

The aforementioned officers violated generally accepted law enforcement custom and practice in this situation and the wrongful death of Mr. Mitchell were the direct and foreseeable results of the unconstitutional excessive force by the aforementioned officers.

81.

The excessive force of the officers entitle the Plaintiff to recover

compensatory damages for the pre-death pain and suffering incurred by Mr. Mitchell.

82.

The estate of Anthony Mitchell is entitled to recover from the Defendant detention officers all damages allowed, including, but not limited to, medical and funeral expenses, pain and suffering, loss of services, protection, care, assistance, society, companionship, comfort, guidance, kindly offices and advice, among other things.

83.

Plaintiff  is also entitled to recover the full value of the life of Anthony Mitchell.

84.

As specifically alleged above, Defendant officers, considering their knowledge and lack of knowledge of the circumstances, used an unreasonable, unnecessary high or dangerous level of force to subdue and/or control Mr. Mitchell, and in using more or improperly dangerous force than reasonably necessary, acted in contravention of accepted law enforcement standards related to the use of force in gaining control over an unarmed Anthony Mitchell.

85.

In inflicting greater force than reasonably necessary to control or subdue Mr. Mitchell, the Defendant officers violated Mr. Mitchell's Fourth Amendment Right to be free from unreasonable seizure of his person, and his Fourteenth Amendment right to substantive due process precedent to the imposition of punishment or death in response to suspected criminal activity.   These rights will collectively be referred to as "Fourth and Fourteenth Amendment Rights."

86.

Defendant detention officers are not entitled to qualified immunity for the constitutional violations alleged herein, due to the fact that no reasonable officer, acting in the circumstances and with the knowledge or lack of knowledge of the deputies as set forth above, would have inflicted the same type, quantity and level of force upon Mr. Mitchell as inflicted on Mr. Mitchell the Defendant officers.

87.

Defendant officers' excessive use of force and corresponding deliberate indifference to Mr. May's Fourth and Fourteenth Amendment Rights, proximately caused Mr. May's death and Plaintiff's damages.

88.

Accordingly, Plaintiff is entitled to recover compensatory damages, punitive

damages, and all other damages allowed under state and federal law from the officers.

## COUNT III: NEGLIGENCE AGAINST JAMES LUSTER, JEREMIAH WHITEHEAD, WILLIAM ROBERTS, JAMES BAUMGARTNER and JEREMY HOLLAND

89.

JAMES LUSTER, JEREMIAH WHITEHEAD, WILLIAM ROBERTS, JAMES BAUMGARTNER and JEREMY HOLLAND failed to exercise that degree of skill and care ordinarily required by firefighters in general, under like conditions, and similar circumstances in their treatment of Anthony Mitchell. The prehospital care personnel of Grady Hospital and Grady EMS grossly deviated from the standard of care ordinarily required by emergency medical services personnel, under like conditions, and similar circumstances for a high-risk patient like Anthony Mitchell specifically related to prehospital patient consent, prehospital emergency medical assessment, prehospital emergency medical management, prehospital emergency medical treatment and prehospital emergency medical transportation.

90.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to establish consent for care for Anthony Mitchell, considering Mr. Mitchell was a dependent adult without capacity to

consent to, or withhold consent for, emergency medical assessment, treatment, and transportation.  Mr. Mitchell was a trauma patient with obvious injuries and a significant mechanism of injury and was known by officers on scene to have a medical history of Autism.

91.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to perform a primary assessment and secondary assessment of Mr. Mitchell's traumatic injuries, which should have included the assessment of the mechanism of injury for Mr. Mitchell, Mr. Mitchell's initial baseline vital signs, pertinent focused assessment of traumatic injuries sustained by Mr. Mitchell, additional vital signs for Mr. Mitchell's condition, and the reassessment of Mr. Mitchell's condition.

92.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to provide any care or treatment to Mr. Mitchell despite the presence of open wounds and bleeding that was in plain sight at the time of patient contact.

93.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to provide any care or treatment of Mr.

Mitchell's known traumatic injuries, as well as the omission of care and treatment of any injuries suffered by Mr. Mitchell discovered subsequent to a primary and secondary assessment performed in accordance with the standard of care.

94.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to transport Mr. Mitchell to the appropriate emergency department, staffed and equipped to manage Mr. Mitchell's traumatic injuries.

95.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to release Mr. Mitchell to an appropriate healthcare representative, guardian, conservator, or legal representative after the on scene emergency medical services personnel chose not to transport Mr. Mitchell, despite the presence of traumatic injuries, including bleeding that was in plain sight.

96.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to accurately and appropriately complete a medical legal prehospital patient care report or record for any of the information related to Mr. Mitchell during the subject event.  Mr. Mitchell was a trauma patient

with obvious injuries and a significant mechanism of injury.   Moreover, Mr. Mitchell was a dependent adult, who did not receive any assessment, care, treatment, or transportation for his traumatic injuries.  The result of the omission of care was abandonment of Mr. Mitchell by Grady EMS AEMT James Baumgartner and Grady EMS Paramedic Jeremy Holland.

97.

The collective acts and omissions of Grady Hospital, Grady EMS AEMT James Baumgartner and Grady EMS Paramedic Jeremy Holland, during the subject event, was a gross deviation in the standard of care and represented a reckless disregard for Anthony Mitchell.

98.

The prehospital care personnel Captain James Luster, Sergeant Jeremiah Whitehead and Firefighter William Roberts, grossly deviated from the standard of care ordinarily required by emergency medical services personnel, under like conditions, and similar circumstances for a high-risk patient like Anthony Mitchell specifically related to prehospital patient consent, prehospital emergency medical assessment, prehospital emergency medical management, and prehospital emergency medical treatment.

99.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to establish consent for care for Anthony Mitchell, considering Mr. Mitchell was a dependent adult without capacity to consent to, or withhold consent for, emergency medical assessment, treatment, and transportation.  Mr. Mitchell was a trauma patient with obvious injuries and a significant mechanism of injury and was known by officers on scene to have a medical history of Autism.

100.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to perform a primary assessment and secondary assessment of Mr. Mitchell's traumatic injuries, which should have included the assessment of the mechanism of injury for Mr. Mitchell, Mr. Mitchell's initial baseline vital signs, pertinent focused assessment of traumatic injuries sustained by Mr. Mitchell, additional vital signs for Mr. Mitchell's condition, and the reassessment of Mr. Mitchell's condition.

101.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to provide any care or treatment to Mr.

Mitchell despite the presence of open wounds and bleeding that was in plain sight at the time of patient contact.

102.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to provide any care or treatment of Mr. Mitchell's known traumatic injuries, as well as the omission of care and treatment of any injuries suffered by Mr. Mitchell discovered subsequent to a primary and secondary assessment performed in accordance with the standard of care.

103.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to release Mr. Mitchell to an appropriate healthcare representative, guardian, conservator, or legal representative after the on scene emergency medical services personnel chose not to transport Mr. Mitchell, despite the presence of traumatic injuries, including bleeding that was in plain sight.

104.

It was a gross deviation from the standard of care for prehospital emergency medical services personnel by failing to accurately and appropriately complete a medical legal prehospital patient care report or record for any of the information related to Mr. Mitchell during the subject event.  Mr. Mitchell was a trauma patient

with obvious injuries and a significant mechanism of injury.   Moreover, Mr. Mitchell was a dependent adult, who did not receive any assessment, care, treatment, or transportation for his traumatic injuries.  The result of the omission of care was abandonment of Mr. Mitchell by Captain Luster, Sergeant Whitehead and Firefighter Roberts.

105.

The collective acts and omissions of Captain James Luster, Sergeant Jeremiah Whitehead and Firefighter William Roberts during the subject event, was a gross deviation in the standard of care and represented a reckless disregard for Anthony Mitchell and led to the cardiac issues which caused the death of Anthony J. Mitchell.

106.

The negligence of JAMES LUSTER, JEREMIAH WHITEHEAD, WILLIAM ROBERTS, JAMES BAUMGARTNER and JEREMY HOLLAND, Inc. includes, but is not limited to, the negligent acts and omissions set forth in the affidavit of John B. Everlove filed contemporaneously with this complaint as Exhibit "B," pursuant to the requirements of O.C.G.A. § 9-11-9.1, and is incorporated herein as if fully restated.

## COUNT IV: VICARIOUS LIABILITY FOR GRADY EMS, LLC

107.

At all times relevant to this action, JAMES BAUMGARTNER and

JEREMY HOLLAND treated Plaintiff while acting as agents or employees of

Defendant Grady EMS, LLC.

108.

Defendant Grady EMS, LLC is responsible for their negligence under the

doctrine of *respondeat superior*, agency or apparent agency.

## COUNT V: DAMAGES

109.

Defendants are liable for the death of Mr. Jackson under the laws of the
State of Georgia.

110.

As a proximate and foreseeable result Defendant's actions and negligence,

Plaintiff is entitled to recover for the pre-death pain and suffering and the wrongful

death of Anthony Mitchell, and all other elements of damages allowed under

Georgia law.

111.

Shanita D. Swanson is the Estate Administrator of the Estate of Anthony

Mitchell Jackson, and is the proper party to bring the claims for Anthony

Mitchell's pre-death pain and suffering, his funeral expenses and his medical expenses.

### 112.

Shanita D. Swanson is the biological mother and was the sole legal guardian of Anthony Mitchell, and is the proper party to bring a claim for the wrongful death of Anthony Mitchell.

### 113.

Defendants are liable to Plaintiff for the full value of the life of Anthony J. Mitchell.

### Count VI:
### Attorney's Fees

### 114.

Plaintiff seeks attorneys' fees against all Defendants under O.C.G.A. § 13-6-11 as Defendants have acted in bad faith, been stubbornly litigious, and caused the plaintiffs unnecessary trouble and expense.

### 115.

Plaintiffs also seek attorney's fees under 2 U.S.C. § 1988(b), 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b).

**WHEREFORE**, Plaintiff prays that she have a trial on all issues and judgment against Defendants as follows:

(a)    Process issue as provided by law;

(b)    That Plaintiff recovers the full value of the life of the decedent;

(b)     That Plaintiff recovers for the decedent's pre-death mental and physical pain and   suffering, funeral expenses and medical expenses;

(c)     That Plaintiff recovers such other and further relief as is just and proper;

(d)     That all issues be tried before a jury.

This 15th day of March, 2021.

Respectfully Submitted,


/s/ Michael D. Harper
MICHAEL D. HARPER
Georgia Bar No. 328378
Attorney for Plaintiff

Michael D. Harper, P.C.
3481 Lakeside Dr. N.E., Suite 2406
Atlanta, Georgia 30326
Telephone: (404) 271-6618
Facsimile: (404) 600-2146
Email: mharper@mharperlaw.com