1    STATE OF CALIFORNIA)
2
3    COUNTY OF VENTURA)
4
5                    **AFFIDAVIT OF JOHN B. EVERLOVE**
6
7    John B. Everlove, being duly sworn, deposes and states:

8                                      1.

9         I, John B. Everlove, hold a national paramedic license, paramedic licenses in

10   Michigan and Florida, as well as a State of California license where I am currently

11   employed.  During the past 30 years, I have treated and transported thousands of

12   patients in various states of distress with emergent and non-emergent conditions.

13   Serving as an Emergency Medical Technician (EMT), Paramedic, Paramedic

14   Preceptor and Field Training Officer, I have trained and instructed prehospital

15   caregiver personnel regarding emergency medical assessment, emergency medical

16   treatment, emergency médical management of patients, patient transportation and

17   ambulance operations.  As an EMT Program Director and Principal Instructor, I

18   have educated, trained and evaluated EMT students regarding the standard of care

19   and transportation of patients in accordance with the Department of Transportation

20   (DOT) and National Highway Traffic Safety Administration (NHTSA) guidelines

21   for Emergency Medical Services personnel.  While in the position of Paramedic

22   Associate  Supervisor  and  Paramedic  Operations  Supervisor,  my  primary

1    responsibilities included responding to emergency calls for service, as well as the

2    supervision of all employees related to prehospital services and the implementation

3    of training standards related to assessment, treatment and patient transportation.

4    As a Clinical Manager, my duties included investigation of all incidents related to

5    patient care and transportation, as well as the oversight and management of the

6    Clinical Quality Assurance (CQA) and Clinical Quality Improvement (CQI)

7    programs relevant to the standard of care for EMTs and Paramedics during

8    emergency medical responses and prehospital emergency care.  I have personally

9    responded to thousands of emergency calls for service and provided emergency

10   medical assessment, emergency medical treatment and emergency medical

11   transportation to patients similar to Anthony Mitchell during the subject event.

12        My curriculum vitae is attached hereto as "Exhibit 1".


13                                    2.


14        As a currently licensed paramedic, employed in that capacity, as well as an

15   EMT Program Director and Primary Instructor, I am familiar with the standard of

16   care for prehospital emergency medical services personnel regarding scene control,

17   consent for emergency medical care, patient assessment, patient treatment, patient

18   transportation and patient care documentation of prehospital patients such as

19   Anthony Mitchell.  I can appropriately evaluate the standard of care regarding the

1    subject event on November 16, 2019 and November 17, 2019, involving Anthony

2    Mitchell.

3                                            3.

4         The following records regarding the subject event with the decedent,

5    Anthony Mitchell, were submitted for review and analysis:

6         - Video footage of subject event (November 16, 2019) from Bojangles

7              Restaurant, located at 5628 Fulton Industrial Blvd. SW, Atlanta, GA

8              30336

9         - Grady Emergency Medical Services medical records for Anthony Mitchell

10        - City of South Fulton Fire Department National Fire Incident Report for the

11             subject event involving Anthony Mitchell

12        - Fulton County Police Department reports for Anthony Mitchell

13        - Grady Hospital Medical Records for Anthony Mitchell

14        - Fulton County Medical Examiner's Office Autopsy Report for Anthony

15             Mitchell

16                                           4.

17        The aforementioned information states the following: On November 16,

18   2018, law enforcement agency representatives responded to a call for service for an

1   irate customer inside Bojangles Restaurant located at 5628 Fulton Industrial Blvd.

2   SW, Atlanta, GA 30336.   The first Fulton County Police Department (FCPD)

3   officer arrived at the business at approximately 2139 hours. Upon arrival, the

4   officer observed Anthony Mitchell, a 19-year-old male with Autism, sitting against

5   the outside of the restaurant, with obvious traumatic injuries to his face.

6        Review of the video surveillance footage from Bojangles Restaurant shows

7   Mr. Mitchell was involved in an altercation with employees of the restaurant

8   beginning at 2130 hours.  The altercation escalated into a physical fight between

9   Mr. Mitchell and at least 5 employees of the restaurant.  The physical fight resulted

10  in obvious injuries to Mr. Mitchell's face and head, according to FCPD officers.

11  Mr. Mitchell was bleeding from the mouth.  The video footage shows Mr. Mitchell

12  restrained with his arms behind his back using handcuffs, placed by responding

13  officers.  Mr. Mitchell was then walked through the parking lot to the location of

14  an awaiting patrol car and was put on the ground in a prone position.  Also, the

15  responding officers utilized an apron from an employee of the restaurant, tied over

16  the head of Mr. Mitchell in what appears to be a modified hood.

17       The police officers moved Mr. Mitchell to the parking lot at approximately

18  2146 hours. At 2158 hours, 12 minutes later, the City of South Fulton Fire

19  Department (SFFD) Engine 13 (staffed by Captain James Luster, Sergeant

4

1    Jeremiah Whitehead and Firefighter William Roberts) was dispatched to the

2    restaurant to treat Mr. Mitchell and arrived on scene of the subject event at 2203

3    hours.  Upon arrival on scene, Captain Luster, Sergeant Whitehead and Firefighter

4    Roberts found Mr. Mitchell in the prone position in the parking lot of the business.

5    Captain Luster, Sergeant Whitehead and Firefighter Roberts noted that Mr.

6    Mitchell was the victim of a possible assault and had incurred traumatic injuries,

7    including bleeding they could see.  Based on the information available to Engine

8    13 personnel, Mr. Mitchell was a patient with obvious injuries at the time Captain

9    Luster, Sergeant Whitehead and Firefighter Roberts arrived on scene.

10   Captain Luster recorded in the incident report that they discussed Mr.

11   Mitchell's presentation and negotiated with the FCPD officers to leave the scene

12   without providing Mr. Mitchell with any emergency medical assessment,

13   emergency medical treatment, or emergency medical transportation. Captain

14   Luster, Sergeant Whitehead and Firefighter Roberts did not record any of the

15   information related to the subject event in the appropriate medical legal reporting

16   format indicated for prehospital emergency medical services patients like Mr.

17   Mitchell.  Therefore, the incident report created by Captain Luster represents the

18   only documentation of the encounter with Mr. Mitchell related to the subject event

19   and the Engine 13 personnel.  The separation of the patient/caregiver relationship

1    between Mr. Mitchell and Captain Luster, Sergeant Whitehead and Firefighter

2    Roberts took place when they left the scene; and Mr. Mitchell was left lying on the

3    ground in the parking lot.  Based on their incident report, Engine 13 departed the

4    scene at 2207 hours which means the total time Captain Luster, Sergeant

5    Whitehead and Firefighter Roberts spent on scene was 4 minutes.

6         Approximately 13 minutes after the departure of Captain Luster, Sergeant

7    Whitehead and Firefighter Roberts, Grady Emergency Medical Services (Grady

8    EMS) Ambulance Number 800, staffed by Advanced Emergency Medical

9    Technician (AEMT) James Baumgartner and Paramedic Jeremy Holland, arrived

10   on scene at 2220 hours, approximately 34 minutes after Mr. Mitchell was

11   handcuffed and placed prone on the ground in the parking lot.  The video

12   surveillance from the restaurant parking lot shows the Grady EMS ambulance pull

13   up to the location of the parked patrol vehicles.  Grady EMS AEMT Baumgartner

14   and Grady EMS Paramedic Holland are seen exiting the ambulance without any

15   medical equipment and walking to the location of Mr. Mitchell and the police

16   officers on scene.  The video footage shows AEMT Baumgartner and Paramedic

17   Holland of Grady EMS standing in the parking lot for several minutes, then

18   returning to the ambulance, getting into the driver's seat and passenger seat, and

6

1   leaving the scene.  The Grady EMS ambulance departed the scene at 2207 hours,

2   approximately 7 minutes after arriving at the restaurant.

3          During their 7 minutes on scene, AEMT Baumgartner and Paramedic

4   Holland of Grady EMS never performed the appropriate prehospital assessment of

5   Mr. Mitchell's condition or traumatic injuries, never provided Mr. Mitchell with

6   indicated medical treatment of his traumatic injuries, and never provided Mr.

7   Mitchell with emergency medical transportation to the closest emergency

8   department staffed and equipped to treat Mr. Mitchell's condition.  Additionally,

9   AEMT Baumgartner and Paramedic Holland of Grady EMS never completed any

10  medical documentation about the call for service regarding Mr. Mitchell and his

11  traumatic injuries.

12          The separation of the patient/caregiver relationship between Mr. Mitchell

13  and AEMT Baumgartner and Paramedic Holland of Grady EMS was never

14  documented in a medical document, and Mr. Mitchell was once again left lying on

15  the ground in the parking lot without any medical care when Grady EMS

16  employees departed the scene.

17          Mr. Mitchell's mother, Shanita Swanson, was contacted by FCPD officers

18  on scene of the subject event.  FCPD officers awaited on scene for Ms. Swanson to

19  arrive at the restaurant to take her son home after the physical fight.  Without any

1  medical caregivers on scene, custody of Mr. Mitchell was transferred to his legal

2  guardian, Ms. Swanson; and both drove back to their residence.

3      The next records related to Mr. Mitchell are from Grady Memorial Hospital,

4  Grady  EMS,  and  the  City  of  South  Fulton  Fire  Department  (SFFD).

5  Approximately 10 minutes after arriving home with Mr. Mitchell, Ms. Swanson

6  went to check on Mr. Mitchell and found him unconscious and unresponsive in his

7  bedroom.   A 911 call for service was placed from Mr. Mitchell's residence at

8  approximately 2307 hours.  The units dispatched to the Mitchell residence were the

9  same City of South Fulton Fire Department (SFFD) Engine 13 personnel, Captain

10  James Luster, and Sergeant Jeremiah Whitehead, Firefighter William Roberts and

11  Grady EMS Ambulance Number 800 employees AEMT James Baumgartner and

12  Paramedic Jeremy Holland.  All the first responders listed above were the same

13  EMS personnel who responded to the initial subject event on November 16, 2019

14  at the Bojangles's Restaurant.

15      Upon arrival at Mr. Mitchell's residence, Mr. Mitchell was in cardiac arrest

16  and CPR was in progress by family members.   According to the prehospital

17  records, it took 10 minutes for the first EMS personnel to arrive on scene.  They

18  were Captain James Luster, Sergeant Jeremiah Whitehead and Firefighter William

19  Roberts with the City of South Fulton Fire Department (SFFD).  The Grady EMS

1   ambulance with Grady EMS AEMT James Baumgartner and Grady EMS
2   Paramedic Jeremy Holland did not arrive on scene at Mr. Mitchell's residence until
3   17 minutes after the initial dispatch.   According to the Patient Care Report
4   completed by Grady EMS Paramedic Holland regarding Mr. Mitchell, the Grady
5   EMS employees made patient contact with Mr. Mitchell at 2327 hours, 20 minutes
6   after the initial 911 call.

7          At the time of patient contact, Mr. Mitchell was in cardiac arrest and had no
8   detectable heart rhythm.  Mr. Mitchell was treated by Grady EMS employees and
9   the firefighters from City of South Fulton Fire Department (SFFD), which was
10  similar to the Advanced Cardiac Life Support (ACLS) guidelines according to the
11  Patient Care Report.   During the course of treatment provided by Grady EMS
12  Paramedic Holland for Mr. Mitchell's cardiac arrest event, three separate forms of
13  intravenous (IV) access were established during the treatment and transportation
14  process. The total time Grady EMS AEMT James Baumgartner and Grady EMS
15  Paramedic Jeremy Holland spent with Mr. Mitchell during the cardiac arrest event
16  was 60 minutes.  The Grady EMS Patient Care Report does not clarify the failures
17  with respect to patient treatment and management, and failure to provide timely
18  transportation to Mr. Mitchell based on the belief by the caregivers that Mr.
19  Mitchell was suffering from a traumatic cardiac arrest event.

1    Mr. Mitchell arrived at Grady Memorial Hospital at 0027 hours on
2    November 17, 2019 still in cardiac arrest. According to hospital records, a Trauma
3    Team was activated to manage Mr. Mitchell's care upon his arrival at the
4    emergency department. However, 4 minutes after arrival at the Grady Memorial
5    Hospital Emergency Department, Mr. Mitchell was pronounced dead.

6                                                5.

7    Based upon my review and analysis of the facts outlined supra, my
8    cumulative knowledge, training, and experience, and based on a reasonable degree
9    of medical certainty, it is my professional opinion the prehospital care personnel of
10   Grady Hospital and Grady EMS grossly deviated from the standard of care
11   ordinarily required by emergency medical services personnel, under like
12   conditions, and similar circumstances for a high-risk patient like Anthony Mitchell
13   specifically related to prehospital patient consent, prehospital emergency medical
14   assessment, prehospital emergency medical management, prehospital emergency
15   medical treatment and prehospital emergency medical transportation.

16   I have identified the following specific acts and omissions in support of this
17   opinion:

18   1)    It was a gross deviation from the standard of care for prehospital emergency
19          medical services personnel by failing to establish consent for care for

10

1    Anthony Mitchell, considering Mr. Mitchell was a dependent adult without

2    capacity to consent to, or withhold consent for, emergency medical

3    assessment, treatment and transportation.  Mr. Mitchell was a trauma patient

4    with obvious injuries and a significant mechanism of injury and was known

5    by officers on scene to have a medical history of Autism.

6  2)  It was a gross deviation from the standard of care for prehospital emergency

7    medical services personnel by failing to perform a primary assessment and

8    secondary assessment of Mr. Mitchell's traumatic injuries, which should

9    have included the assessment of the mechanism of injury for Mr. Mitchell,

10    Mr. Mitchell's initial baseline vital signs, pertinent focused assessment of

11    traumatic injuries sustained by Mr. Mitchell, additional vital signs for Mr.

12    Mitchell's condition, and the reassessment of Mr. Mitchell's condition.

13  3)  It was a gross deviation from the standard of care for prehospital emergency

14    medical services personnel by failing to provide any care or treatment to Mr.

15    Mitchell, despite the presence of open wounds and bleeding that was in plain

16    sight at the time of patient contact.

17  4)  It was a gross deviation from the standard of care for prehospital emergency

18    medical services personnel by failing to provide any care or treatment of Mr.

19    Mitchell's known traumatic injuries, as well as the omission of care and

1   treatment of any injuries suffered by Mr. Mitchell discovered subsequent to

2   a primary and secondary assessment performed in accordance with the

3   standard of care.

4   5)   It was a gross deviation from the standard of care for prehospital emergency

5   medical services personnel by failing to transport Mr. Mitchell to the

6   appropriate emergency department, staffed and equipped to manage Mr.

7   Mitchell's traumatic injuries.

8   6)   It was a gross deviation from the standard of care for prehospital emergency

9   medical services personnel by failing to release Mr. Mitchell to an

10   appropriate healthcare representative, guardian, conservator or legal

11   representative after the on-scene emergency medical services personnel

12   chose not to transport Mr. Mitchell, despite the presence of traumatic

13   injuries, including bleeding that was in plain sight.

14   7)   It was a gross deviation from the standard of care for prehospital emergency

15   medical services personnel by failing to accurately and appropriately

16   complete a medical legal prehospital patient care report or record for any of

17   the information related to Mr. Mitchell during the subject event.   Mr.

18   Mitchell was a trauma patient with obvious injuries and a significant

19   mechanism of injury.  Moreover, Mr. Mitchell was a dependent adult, who

1   did not receive any assessment, care, treatment, or transportation for his

2   traumatic injuries.  The result of the omission of care was abandonment of

3   Mr. Mitchell by Grady EMS AEMT James Baumgartner and Grady EMS

4   Paramedic Jeremy Holland.

5                                              6.

6   The collective acts and omissions of Grady Hospital, Grady EMS AEMT

7   James Baumgartner and Grady EMS Paramedic Jeremy Holland, during the subject

8   event, was a gross deviation in the standard of care and represented a reckless

9   disregard for Anthony Mitchell.

10                                             7.

11   Based upon my review and analysis of the facts outlined supra, my

12   cumulative knowledge, training, and experience, and based on a reasonable degree

13   of medical certainty, it is my professional opinion the prehospital care personnel

14   Captain James Luster, Sergeant Jeremiah Whitehead and Firefighter William

15   Roberts grossly deviated from the standard of care ordinarily required by

16   emergency medical services personnel under like conditions and similar

17   circumstances for a high-risk patient like Anthony Mitchell specifically related to

18   prehospital patient consent, prehospital emergency medical assessment, prehospital

19   emergency medical management and prehospital emergency medical treatment.

1        I have also identified the following specific acts and omissions in support of

2  this opinion:

3  1)  It was a gross deviation from the standard of care for prehospital emergency

4        medical services personnel by failing to establish consent for care for

5        Anthony Mitchell, considering Mr. Mitchell was a dependent adult without

6        capacity to consent to, or withhold consent for, emergency medical

7        assessment, treatment, and transportation.  Mr. Mitchell was a trauma patient

8        with obvious injuries and a significant mechanism of injury and was known

9        by officers on scene to have a medical history of Autism.

10  2)  It was a gross deviation from the standard of care for prehospital emergency

11        medical services personnel by failing to perform a primary assessment and

12        secondary assessment of Mr. Mitchell's traumatic injuries, which should

13        have included the assessment of the mechanism of injury to Mr. Mitchell,

14        Mr. Mitchell's initial baseline vital signs, pertinent focused assessment of

15        traumatic injuries sustained by Mr. Mitchell, additional vital signs for Mr.

16        Mitchell's condition, and the reassessment of Mr. Mitchell's condition.

17  3)  It was a gross deviation from the standard of care for prehospital emergency

18        medical services personnel by failing to provide any care or treatment to Mr.

14

1    Mitchell despite the presence of open wounds and bleeding that were in

2    plain sight at the time of patient contact.

3  4)   It was a gross deviation from the standard of care for prehospital emergency

4      medical services personnel by failing to provide any care or treatment of Mr.

5      Mitchell's known traumatic injuries, as well as the omission of care and

6      treatment of any injuries suffered by Mr. Mitchell discovered subsequent to

7      a primary and secondary assessment performed in accordance with the

8      standard of care.

9  5)   It was a gross deviation from the standard of care for prehospital emergency

10     medical services personnel by failing to release Mr. Mitchell to an

11     appropriate healthcare representative, guardian, conservator, or legal

12     representative after the on scene emergency medical services personnel

13     chose not to transport Mr. Mitchell, despite the presence of traumatic

14     injuries, including bleeding that was in plain sight.

15  6)   It was a gross deviation from the standard of care for prehospital emergency

16     medical services personnel by failing to accurately and appropriately

17     complete a medical legal prehospital patient care report or record for any of

18     the information related to Mr. Mitchell during the subject event.   Mr.

19     Mitchell was a trauma patient with obvious injuries and a significant

15

1    mechanism of injury.  Moreover, Mr. Mitchell was a dependent adult, who

2    did not receive any assessment, care, treatment, or transportation for his

3    traumatic injuries.  The result of the omission of care was abandonment of

4    Mr. Mitchell by Captain Luster, Sergeant Whitehead and Firefighter

5    Roberts.

6                                        8.

7    The collective acts and omissions of Captain James Luster, Sergeant

8    Jeremiah Whitehead and Firefighter William Roberts during the subject event,

9    were a gross deviation in the standard of care and represented a reckless disregard

10   for Anthony Mitchell.

11                                       9.

12   This affidavit is not necessarily inclusive of all of the breaches of the

13   standard of care by the aforementioned medical professionals in their medical

14   treatment of Anthony Mitchell; but I understand that for purposes of this Affidavit,

15   I am only required to identify at least one (1) act of malpractice with respect to

16   each Defendant that provided medical care to Anthony Mitchell.

17                                       10.

18   I make this Affidavit under oath after having been duly sworn, on the basis

19   of my education, training and medical experience.  I am of legal age and fully

1    competent to testify to all opinions and conclusions states herein.  This Affidavit is

2    executed for the purpose of being attached to, and used in, support of the Plaintiffs'

3    Complaint as required by O.C.G.A. §9-11-9.1.

4

5        *Further Affiant sayeth not.*

6

7

8    _____

9                    **JOHN B. EVERLOVE**

10

11   Sworn and subscribed to before me

12

13   this _29___ day of October, 2020.

14

15

16   _____



17   Notary Public

18   My commission expires:    *Aug    12, 2023*