# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| SHANITA D. SWANSON, Natural Mother and Administrator of the Estate of Anthony J. Mitchell, | ) ) ) ) |
| *Plaintiff,* | ) Civil Action No: 1:21-cv-00996-AT ) |
| V. | ) ) |
| FULTON COUNTY, GA, GRADY MEMORIAL HOSPITAL CORPORATION, JAMES LUSTER, JEREMIAH WHITEHEAD, WILLIAM ROBERTS, JAMES BAUMGARTNER and JEREMY HOLLAND, JENNIFER JONES, VISTORIA WHALEY, DOUGLASS HARDNETT and DESMOND LOWE, | ) ) ) ) ) ) ) ) ) ) |
| *Defendants.* | ) ) |

## PLAINTIFF'S RESPONSE TO FULTON COUNTY POLICE OFFICER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff, and make and file this response to the Fulton County Police Officer Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint arising from Plaintiff's allegations against Defendants for violating the laws of the United States, thereby proximately causing the excruciating pre-death

pain and suffering and the wrongful death of Anthony J. Mitchell on November 16, 2019 in Atlanta, Georgia.  The Court has already rejected the Defendant Officers' opposition to be added to this lawsuit (Doc. No. 46).  The officers are now making a second attempt to be removed from this case before discovery begins.  The Defendant Officers' Motion to Dismiss is nothing more than a delay tactic to prevent Ms. Swanson from learning the full truth regarding why her 19 year old autistic son, Anthony Mitchell, died shortly after the Defendant Officers placed a knee in his back for a prolonged period of thirty-four (34) minutes while he was in hand-cuffs and not resisting arrest.

Plaintiff filed her Second Amended Complaint, *inter alia,* to bring charges against the Police Officers for violations of 42 U.S.C. § 1983.  Plaintiff has alleged specific constitutional violations against Defendants in her Second Amended Complaint.  For purposes of Defendants' Motion to Dismiss, Plaintiff's allegations are accepted as true.  Therefore, Defendants' Motion to Dismiss should be denied.

## I. Statement of the Case

Anthony Mitchell was a 19-year-old male with Autism. (Doc. 47 at ¶ 16). On November 16, 2019, Anthony Mitchell arrived to the Bojangles Restaurant located at 5628 Fulton Industrial Blvd. SW, Atlanta, GA 30336 to have a meal. (Doc. 47 at ¶ 17). While dining at the restaurant, Anthony Mitchell was taunted by

Bojangles Restaurant employees.  (Doc. 47 at ¶ 18).  As a result of being a taunted, a confrontation ensued between the Anthony Mitchell and the restaurant employees.  (Doc. 47 at ¶ 19)  On November 16, 2019, law enforcement agency representatives responded to a call for service for an irate customer inside Bojangles Restaurant located at 5628 Fulton Industrial Blvd. SW, Atlanta, GA 30336.  (Doc. 47 at ¶ 20).  The first Fulton County Police Department (FCPD) officer arrived at the business at approximately 2139 hours.  (Doc. 47 at ¶ 21). Upon arrival, the officer observed Anthony Mitchell, a 19-year-old male with Autism, sitting against the outside of the restaurant, with obvious traumatic injuries to his face. (Doc. 47 at ¶ 22).  Upon review of the video surveillance footage from Bojangles Restaurant, Mr. Mitchell was involved in an altercation with employees of the restaurant beginning at 2130 hours.  (Doc. 47 at ¶ 23).  The altercation escalated into a physical fight between Mr. Mitchell and at least 5 employees of the restaurant.  (Doc. 47 at ¶ 24).  The physical fight resulted in obvious injuries to Mr. Mitchell's face and head according to FCPD officers.  (Doc. 47 at ¶ 25).  Mr. Mitchell was bleeding from the mouth as a result of the fight.  (Doc. 47 at ¶ 26). Additional officers arrived to the scene and then restrained Mr. Mitchell in handcuffs with his arms behind his back, tied a Bojangles apron around his face (which appeared to be a modified hood) and pressed a police officer's knee into

Mr. Mitchell's back, while Mr. Mitchell was inside the restaurant.  (Doc. 47 at ¶ 27).  The officers then walked Mr. Mitchell out of the restaurant, bypassed a police vehicle that Mr. Mitchell could have been placed in, walked Mr. Mitchell through the parking lot and put Mr. Mitchell on the concrete ground in a prone position with an officer's knee in his back and the apron tied across his face.  (Doc. 47 at ¶ 29).  The position that Mr. Mitchell was placed in compromised Mr. Mitchell's breathing. (Doc. 47 at ¶ 30).  The police officers moved Mr. Mitchell to the parking lot at approximately 2146 hours. (Doc. 47 at ¶ 28).  At 2158 hours, , the City of South Fulton County Fire Department (FCFD) Engine 13 staffed by Captain James Luster, Sergeant Jeremiah Whitehead and Firefighter William Roberts, were dispatched to the restaurant to treat Mr. Mitchell and arrived on scene of the subject event at 2203 hours.  (Doc. 47 at ¶ 32).  Upon arrival on scene, Captain Luster, Sergeant Whitehead and Firefighter Roberts, found Mr. Mitchell in the prone position in the parking lot of the business. (Doc. 47 at ¶ 33).  Captain Luster, Sergeant Whitehead and Firefighter Roberts, noted that Mr. Mitchell was the victim of a possible assault and had incurred traumatic injuries, including bleeding they could see.  (Doc. 47 at ¶ 34).  Based on the information available to Engine 13 personnel, Mr. Mitchell was a patient with obvious injuries at the time Captain Luster, Sergeant Whitehead and Firefighter Roberts arrived on scene.

(Doc. 47 at ¶ 35).   Captain Luster recorded in the incident report that they discussed Mr. Mitchell's presentation and negotiated with the FCPD officers to leave the scene without providing Mr. Mitchell with any emergency medical assessment, emergency medical treatment, or emergency medical transportation. (Doc. 47 at ¶ 36).  Captain Luster, Sergeant Whitehead and Firefighter Roberts did not record any of the information related to the subject event in the appropriate medical legal reporting format indicated for prehospital emergency medical services patients like Mr. Mitchell.   (Doc. 47 at ¶ 37).   Therefore, the incident report created by Captain Luster represents the only documentation of the encounter with Mr. Mitchell related to the subject event and the Engine 13 personnel. (Doc. 47 at ¶ 38).  The separation of the patient/caregiver relationship between Mr. Mitchell and Captain Luster, Sergeant Whitehead and Firefighter Roberts took place when they left the scene and Mr. Mitchell was left lying on the ground in the parking lot. (Doc. 47 at ¶ 39).  Based on their incident report, Engine 13 departed the scene at 2207 hours which means the total time Captain Luster, Sergeant Whitehead and Firefighter Roberts spent on scene was 4 minutes. (Doc. 47 at ¶ 40).   Approximately 13 minutes after the departure of Captain Luster, Sergeant Whitehead and Firefighter Roberts, Grady Emergency Medical Services (Grady EMS) Ambulance Number 800, staffed by Advanced Emergency Medical

Technician (AEMT) James Baumgartner and Paramedic Jeremy Holland, arrived on scene at 2220 hours, approximately 34 minutes after Mr. Mitchell was handcuffed and placed prone on the ground in the parking lot.  (Doc. 47 at ¶ 41). The video surveillance from the restaurant parking lot shows the Grady EMS ambulance pull up to the location of the parked patrol vehicles.  (Doc. 47 at ¶ 42). Grady EMS AEMT Baumgartner and Grady EMS Paramedic Holland are seen exiting the ambulance without any medical equipment and walking to the location of Mr. Mitchell and the police officers on scene.  (Doc. 47 at ¶ 43).  The video footage shows AEMT Baumgartner and Paramedic Holland of Grady EMS standing in the parking lot for several minutes, then returning to the ambulance, getting into the driver's seat and passenger seat, and leaving the scene. (Doc. 47 at ¶ 44).   The Grady EMS ambulance departed the scene at 2207 hours, approximately 7 minutes after arriving at the restaurant. (Doc. 47 at ¶ 45).  During their 7 minutes on scene, AEMT Baumgartner and Paramedic Holland of Grady EMS never performed the appropriate prehospital assessment of Mr. Mitchell's condition or traumatic injuries, never provided Mr. Mitchell with indicated medical treatment of his traumatic injuries, and never provided Mr. Mitchell with emergency medical transportation to the closest emergency department staffed and equipped to treat Mr. Mitchell's condition.   (Doc. 47 at ¶ 46).   Additionally,

AEMT Baumgartner and Paramedic Holland of Grady EMS never completed any medical documentation about the call for service regarding Mr. Mitchell and his traumatic injuries. (Doc. 47 at ¶ 47).   The separation of the patient/caregiver relationship between Mr. Mitchell and AEMT Baumgartner and Paramedic Holland of Grady EMS was never documented in a medical document, and Mr. Mitchell was once again left lying on the ground in the parking lot without any medical care when Grady EMS employees departed the scene.  (Doc. 47 at ¶ 48). Mr. Mitchell's mother, Shanita Swanson, was contacted by FCPD officers on scene of the subject event.  (Doc. 47 at ¶ 49).  FCPD officers awaited on scene for Ms. Swanson to arrive at the restaurant to take her son home after the physical fight.  (Doc. 47 at ¶ 50).  Without any medical caregivers on scene, custody of Mr. Mitchell was transferred to his legal guardian, Ms. Swanson, and both drove back to their residence. (Doc. 47 at ¶ 51).  Incident reports and medical records establish that Mr. Mitchell received care on November 17, 2019 from Grady Memorial Hospital, Grady EMS, and the City of South Fulton County Fire Department. (Doc. 47 at ¶ 52). Approximately 10 minutes after arriving home with Mr. Mitchell, Ms. Swanson went to check on Mr. Mitchell and found him unconscious and unresponsive in his bedroom.  (Doc. 47 at ¶ 53).  A 911 call for service was placed from Mr. Mitchell's residence at approximately 2307 hours.  (Doc. 47 at ¶ 54).

The units dispatched to the Mitchell residence were the same City of South Fulton County Fire Department Engine 13 personnel, Captain James Luster, and Sergeant Jeremiah Whitehead, Firefighter William Roberts, and Grady EMS Ambulance 800 employees AEMT James Baumgartner, and Paramedic Jeremy Holland. (Doc. 47 at ¶ 55). All the first responders listed above, were the same EMS personnel that responded to the initial subject event on November 16, 2019 at the Bojangles's Restaurant. (Doc. 47 at ¶ 56). Upon arrival at Mr. Mitchell's residence, Mr. Mitchell was in cardiac arrest and CPR was in progress by family members. (Doc. 47 at ¶ 57). According to the prehospital records, it took 10 minutes for the first EMS personnel to arrive on scene and they were Captain James Luster, and Sergeant Jeremiah Whitehead, Firefighter William Roberts with the City of South Fulton County Fire Department. (Doc. 47 at ¶ 58). The Grady EMS ambulance with Grady EMS AEMT James Baumgartner and Grady EMS Paramedic Jeremy Holland did not arrive on scene at Mr. Mitchell's residence until 17 minutes after the initial dispatch. (Doc. 47 at ¶ 59). According to the Patient Care Report completed by Grady EMS Paramedic Holland regarding Mr. Mitchell, the Grady EMS employees made patient contact with Mr. Mitchell at 2327 hours; 20 minutes after the initial 911 call. (Doc. 47 at ¶ 60). At the time of patient contact, Mr. Mitchell was in cardiac arrest and had no detectable heart rhythm. (Doc. 47 at ¶

61).  Mr. Mitchell was treated by Grady EMS employees and the firefighters from City of South Fulton County Fire Department, which was similar to the Advanced Cardiac Life Support (ACLS) guidelines according to the Patient Care Report. (Doc. 47 at ¶ 62).   During the course of treatment provided by Grady EMS Paramedic Holland for Mr. Mitchell's cardiac arrest event, there are three separate forms of Intravenous (IV) access that were established during the treatment and transportation process.   (Doc. 47 at ¶ 63).   The total time Grady EMS AEMT James Baumgartner and Grady EMS Paramedic Jeremy Holland spent with Mr. Mitchell during the cardiac arrest event was 60 minutes.  (Doc. 47 at ¶ 64).   The Grady EMS Patient Care Report does not clarify the failures with respect to patient treatment and management, and failure to provide timely transportation to Mr. Mitchell based on the belief by the caregivers that Mr. Mitchell was suffering from a traumatic cardiac arrest event. (Doc. 47 at ¶ 65).  Mr. Mitchell arrived at Grady Memorial Hospital at 0027 hours on November 17, 2019 still in cardiac arrest. (Doc. 47 at ¶ 66).  According to hospital records, a Trauma Team was activated to manage Mr. Mitchell's care upon his arrival at the emergency department. However, 4 minutes after arrival at the Grady Memorial Hospital Emergency Department, Mr. Mitchell was pronounced dead.  (Doc. 47 at ¶ 67).

## II. Legal Analysis

## <u>A, Standard of Review</u>

In ruling on a motion to dismiss, courts must view the complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc.* v *Long County,* Ga., 999 F.2d 1508, 1510 (11th Cir. 1993).   Courts should liberally construe the complaint's allegations in the Plaintiffs favor. *Jenkins* v. *McKeithen,* 395 U.S. 411, 421 (1969).  The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley*  v. *Gibson,* 355 U.S. 41 45-46 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts, will not prevent dismissal." *Davila* v. *Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss, "Courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" U.S. v.

*Baxter Intern., Inc.,* 345 F.3d 866, 880 (11th Cir.2003) (citing Fed. R. Civ. P. 8(a))[1]. This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe* v. *Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678,683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* (internal citation and quotations omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989). A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). As shown below, Defendants ignore Rule 8's plausibility standard and ignore clearly pleaded facts that, if proven, will entitle Plaintiff to relief.

---

[1] There is no heightened pleading standard for claims brought pursuant to 42 U.S.C. § 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163,164 (1993) (holding that a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in civil cases).

## B. Plaintiff Has Clearly Stated Legally Valid Claims of Excessive Force Against Defendant Officers

As stated above the Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief.  Here, the Second Amended Complaint clearly alleges facts that will support a claim for relief against the Defendant officers.

The Fourth Amendment encompasses the right to be free from the use of excessive force during an arrest.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). An excessive force claim is analyzed under the "objective reasonableness" standard. *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009).

This case is very similar to *Patel v. City of Madison, Alabama and Eric Parker 959 F. 3d 1330 (11 Cir. 2020).*  In *Patel,* the court found that where officers use gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands the officers violate the Fourth Amendment and are denied qualified immunity.  *Id.* at 1347.  The court ruled that the suspect in that case was walking with the officers and obeying their commands when used force which resulted in the suspect being paralyzed.  *Id.* at 1348.

Here, the evidence will show that Anthony Mitchell was cooperating with police, walking with the police and not resisting when they slammed him to the ground, put a knee his back for a prolonged amount of time of thirty-four minutes, which, according to Plaintiff's expert, contributed to his death.  The other officers watched in compliance, and therefore can also be held liable for excessive force.  Please see *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986).

Accordingly, officers Jennifer Jones, Victoria Whaley, Douglas Hardnett and Desmond Lowe did not act objectively reasonably during the deadly confrontation with Anthony Mitchell. *Id.* at 1348.    They in fact committed excessive force against Mr. Mitchell in violation of the 4th Amendment of the United States Constitution on November 16, 2019, which contributed to the death of Anthony Mitchell.  *Id*.

### III. Conclusion

Plaintiff's Second Amended Complaint (taken as true) clearly alleges excessive force against the Defendant Police Officers which violated the  4th Amendment and led to the death of Mr. Mitchell.   Defendants' request that the Court take their facts as truth contradict clearly established laws pertaining to a

13

Motion to Dismiss.  Accordingly, Plaintiff requests that the Defendant Officers'

Motion to Dismiss be denied.

      This 1st day of October, 2021.

              Respectfully Submitted,

              /s/ Michael D. Harper
              MICHAEL D. HARPER
              Georgia Bar No. 328378
              Attorney for Plaintiff

Michael D. Harper, P.C.
3481 Lakeside Dr. N.E., Suite 2406
Atlanta, Georgia 30326
Telephone: (404) 271-6618
Facsimile: (404) 600-2146
Email: mharper@mharperlaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT OFFICERS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system which will automatically send email notifications of such filing to the parties and/or attorneys of record.

This 1st day of October, 2021.

Respectfully Submitted,

/s/ Michael D. Harper
MICHAEL D. HARPER
Georgia Bar No. 328378
Attorney for Plaintiff

Michael D. Harper, P.C.
3481 Lakeside Dr. N.E., Suite 2406
Atlanta, Georgia 30326
Telephone: (404) 271-6618
Facsimile: (404) 600-2146
Email: mharper@mharperlaw.com