IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| SHANITA SWANSON, Natural Mother and Administrator of the Estate of Anthony J. Mitchell, | : : : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 1:21-cv-0996-AT |
| v. | : : : | |
| FULTON COUNTY, GEORGIA, *et al.*, | : : | |
| Defendants. | : | |

## **ORDER**

This tragic case, involving the death of a 19-year-old autistic young man, is before the Court on Fulton County, Georgia's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 50] and Fulton County Police Officers Jennifer Jones, Victoria Whaley, Douglass Hardnett, and Desmon Lowe's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 67]. For the following reasons, the Court **DENIES** the Fulton County Police Officers' Motion to Dismiss. Additionally, the Court **GRANTS** Fulton County, Georgia's Motion to Dismiss, subject to allowing Plaintiff to file a third amended complaint that addresses the pleading deficiencies identified in this Order within 60 days of the date of this Order.

## I.   Background[1]

Anthony Mitchell was a 19-year-old male with autism. (Second Amended Complaint ("SAC"), Doc. 47 ¶ 16.) On November 16, 2019, Mr. Mitchell arrived at a Bojangles restaurant in Atlanta, Georgia to have a meal. (*Id.* ¶ 17.) While dining at the restaurant, Mr. Mitchell was taunted by Bojangles employees. (*Id.* ¶ 18.) This taunting led to a confrontation between Mr. Mitchell and several employees. (*Id.* ¶ 19.) Law enforcement agency representatives received a call concerning an "irate customer" at the Bojangles. (*Id.* ¶ 20.) Approximately three hours after Mr. Mitchell's encounter with the Bojangles employees, Mr. Mitchell died following the incidents described below.

The following timeline and the facts alleged in the Second Amended Complaint further describe the events leading up to the call to law enforcement and the events that transpired between November 16 and November 17, 2019.

| | |
|---|---|
| **9:30 pm** | On November 16, 2019, Mr. Mitchell became involved in an altercation with several Bojangles employees, which led to a physical fight between Mr. Mitchell and at least five employees. (*Id.* ¶¶ 23–24.) The physical fight resulted in obvious injuries to Mr. Mitchell's face and head. (*Id.* ¶ 25.) Mr. Mitchell was bleeding from the mouth as a result of the fight. (*Id.* ¶ 26.) |
| **9:39 pm** | A Fulton County police officer arrived at the Bojangles. (*Id.* ¶ 21.) Upon arrival, the officer observed Mr. Mitchell sitting against the |

---

[1] Consistent with the motion to dismiss standard, the Court takes the following facts, which were alleged in Plaintiff's Second Amended Complaint, as true.

outside of the restaurant with obvious traumatic injuries to his face. (*Id.* ¶ 22.)

Some time later, additional Fulton County police officers arrived at the scene, and the officers and Mr. Mitchell went inside the restaurant. (*Id.* ¶ 27.) While inside the restaurant, the officers restrained Mr. Mitchell in handcuffs with his arms behind his back and tied a Bojangles apron around his face (which appeared to be a modified hood). (*Id.*) One of the officers then pressed a knee into Mr. Mitchell's back. (*Id.*)

| | |
|---|---|
| **9:46 pm** | The Fulton County police officers then walked Mr. Mitchell out of the Bojangles, bypassed a police vehicle in which Mr. Mitchell could have been placed, and walked Mr. Mitchell through the parking lot. (*Id.* ¶¶ 28–29.) Mr. Mitchell was then placed on the concrete ground in a prone position with a single officer's knee in his back and the Bojangles apron still tied across his face. (*Id.*) The position in which Mr. Mitchell was placed compromised his breathing. (*Id.* ¶ 30.) The other officers watched as the single officer placed a knee in Mr. Mitchell's back for a prolonged period of time and did not intervene. (*Id.* ¶ 31.) |
| **9:58 pm** | The City of South Fulton County Fire Department ("SFFD") Engine 13 was dispatched to the Bojangles in order to treat Mr. Mitchell. (*Id.* ¶ 32.) Engine 13 was staffed by Captain James Luster, Sergeant Jeremiah Whitehead, and Firefighter William Roberts. (*Id.*) |
| **10:03 pm** | SFFD Engine 13 Captain James Luster, Sergeant Jeremiah Whitehead, and Firefighter William Roberts arrived at the Bojangles. (*Id.*) Upon arrival on the scene, they found Mr. Mitchell |

still in the prone position with an officer's knee in his back in the Bojangles parking lot. (*Id.* ¶ 33.)

The Engine 13 team noted that Mr. Mitchell was the victim of a possible assault and had incurred traumatic injuries, including bleeding, that were obvious. (*Id.* ¶¶ 34–35.) In an incident report, Captain Luster reported that the Engine 13 team discussed Mr. Mitchell's presentation with the Fulton County police officers. (*Id.* ¶ 36.) The Engine 13 team then negotiated with the Fulton County police officers to leave the scene without providing Mr. Mitchell with an emergency medical assessment, emergency medical treatment, or emergency medical transportation. (*Id.*)

The Engine 13 team did not record any of the information related to the Bojangles incident in the appropriate medical legal reporting format indicated for prehospital emergency medical services patients like Mr. Mitchell. (*Id.* ¶ 37.) Therefore, the incident report created by Captain Luster represents the only documentation of the encounter with Mr. Mitchell related to the Bojangles incident and the Engine 13 team. (*Id.* ¶ 38.)

| | |
|---|---|
| **10:07 pm** | The SFFD Engine 13 team departed the scene, which means that Captain Luster, Sergeant Whitehead, and Firefighter Roberts spent a total of four minutes at the Bojangles. (*Id.* ¶ 40.) Mr. Mitchell was left lying on the ground in the parking lot. (*Id.* ¶ 39.) |
| **10:20 pm** | Grady Emergency Medical Services ("Grady EMS") Ambulance Number 800, staffed by Advanced Emergency Medical Technician ("AEMT") James Baumgartner and Paramedic Jeremy Holland, arrived at the Bojangles approximately thirty-four minutes after Mr. |

Mitchell was handcuffed and placed in prone position on the ground with a knee in his back in the Bojangles parking lot. (*Id.* ¶ 41.) Although it is somewhat unclear in the Second Amended Complaint, Plaintiff's briefing suggests that Mr. Mitchell was removed from prone position and the officer's knee was removed from his back around this time, i.e., approximately thirty-four minutes after Mr. Mitchell was placed in prone position with an officer's knee in his back. (Pl. Resp. to Fulton County Police Officers' MTD, Doc. 69 at 2.)

Video surveillance from the parking lot reveals that the Grady EMS ambulance pulled up to the location of several parked Fulton County officer vehicles. (SAC, Doc. 47 ¶ 42.) In the video, Grady EMS AEMT Baumgartner and Paramedic Holland are seen exiting the ambulance without any medical equipment and walking to the location of Mr. Mitchell and the police officers on scene. (*Id.* ¶ 43.)

**10:27 pm** After standing in the parking lot for several minutes, Grady AEMT Baumgartner and Paramedic Holland returned to the ambulance and left the scene. (*Id.* ¶ 44.) The Grady EMS ambulance departed the scene approximately seven minutes after arriving there, and like the Engine 13 team, the Grady EMS team left Mr. Michell lying on the ground in the parking lot. (*Id.* ¶¶ 45, 48.)

During their seven minutes on scene, AEMT Baumgartner and Paramedic Holland never performed the appropriate prehospital assessment of Mr. Mitchell's condition or traumatic injuries, never provided Mr. Mitchell with medical treatment for his traumatic injuries, and never provided Mr. Mitchell with emergency medical transportation to the closest emergency department staffed and

| | |
|---|---|
| | equipped to treat Mr. Mitchell's condition. (*Id.* ¶ 46.) Additionally, they never completed any medical documentation about the call for service regarding Mr. Mitchell and his traumatic injuries. (*Id.* ¶ 47.) |
| **10:28 pm**<br><br>**to**<br><br>**11:06 pm** | At some point, Mr. Mitchell's mother and legal guardian, Shanita Swanson, was contacted by the Fulton County police officers at the Bojangles. (*Id.* ¶¶ 49, 51.) The officers waited on the scene for Ms. Swanson to arrive at the restaurant to take her son home. (*Id.* ¶ 50.) After she arrived, and without any medical caregivers on scene, custody of Mr. Mitchell was transferred to Ms. Swanson. (*Id.* ¶ 51.) The pair then drove back to their residence. (*Id.*) Approximately ten minutes after arriving home with Mr. Mitchell, Ms. Swanson went to check on Mr. Mitchell and found him unconscious and unresponsive in his bedroom. (*Id.* ¶ 53.) |
| **11:07 pm** | A 911 call for service was placed from Mr. Mitchell and Ms. Swanson's residence. (*Id.* ¶ 54.) The units dispatched to the residence were the same SFFD Engine 13 personnel (Captain James Luster, Sergeant Jeremiah Whitehead, and Firefighter William Roberts) and Grady EMS Ambulance 800 employees (AEMT James Baumgartner and Paramedic Jeremy Holland) that responded to the initial incident at the Bojangles restaurant. (*Id.* ¶¶ 55–56.) |
| **11:17 pm** | The Engine 13 team arrived at Mr. Mitchell and Ms. Swanson's residence in ten minutes. (*Id.* ¶ 58.) When the Engine 13 team arrived, Mr. Mitchell was in cardiac arrest, and Mr. Mitchell and Ms. Swanson's family members were performing CPR. (*Id.* ¶ 57.) |
| **11:27 pm** | According to the Patient Care Report completed by Grady EMS Paramedic Holland, the Grady EMS employees made patient contact with Mr. Mitchell twenty minutes after the 911 call from Mr. Mitchell and Ms. Swanson's residence. (*Id.* ¶ 60.) At the time of |

| | patient contact, Mr. Mitchell was in cardiac arrest and had no detectable heart rhythm. (*Id.* ¶ 61.) |
|---|---|
| **12:27 am** | Mr. Mitchell arrived at Grady Memorial Hospital on November 17, 2019 still in cardiac arrest. (*Id.* ¶ 66.) The total time Grady EMS AEMT Baumgartner and Paramedic Holland spent with Mr. Mitchell during the cardiac arrest event was sixty minutes. (*Id.* ¶ 64.) |
| **12:31 am** | According to hospital records, a Trauma Team was activated to manage Mr. Mitchell's care upon his arrival at the Grady Memorial Hospital Emergency Department. (*Id.* ¶ 67.) However, four minutes after arrival at the Emergency Department, Mr. Mitchell was pronounced dead. (*Id.*) |

On March 10, 2021, Mr. Mitchell's mother, Shanita Swanson, filed this lawsuit. (Doc. 1.) On February 11, 2021 and June 25, 2021, Ms. Swanson amended her Complaint and asserted 42 U.S.C. § 1983 claims against Fulton County, Georgia ("Fulton County") and Fulton County police officers Jennifer Jones, Victoria Whaley, Douglass Hardnett, and Desmon Lowe. (Docs. 7 and 47.)

Ms. Swanson asserts a § 1983 claim for excessive force against the four Fulton County police officers. Ms. Swanson argues that the placement of an officer's knee on Mr. Mitchell's back for a prolonged period of time (while the other officers watched and did not intervene) compromised his breathing and ultimately caused or contributed to his death. (SAC, Doc. 47 ¶¶ 30, 87.) Additionally, Ms. Swanson argues that Fulton County is liable for Mr. Mitchell's death because its

policies and customs permitted its police officers to act with deliberate indifference to Mr. Mitchell's rights and ultimately caused his death. (*Id.* ¶¶ 71–72, 74.) Ms. Swanson also focuses on Fulton County's policies and customs concerning autistic individuals or individuals with mental impairments, as Ms. Swanson alleges that the Fulton County police officers knew that Mr. Mitchell was autistic but failed to take this into account in handling this incident. (*See id.* ¶¶ 73, 90.)

Ms. Swanson identifies the following policies and practices as leading to the officers' allegedly unconstitutional behavior:

- Fulton County failed to establish reasonable policies and procedures, including the training of its officers in methods, techniques, and approaches designed to prevent the use of excessive force in responding to situations involving criminal suspects like Mr. Mitchell, who was autistic and physically injured when he was encountered by Fulton County. (*Id.* ¶ 69.)

- Fulton County failed to "adequately hire, supervise and retain its officers" who encountered Mr. Mitchell. (*Id.* ¶ 73.)

- Fulton County "failed to adequately train [its] officers to employ safe, reasonable[,] and necessary techniques designed to prevent the encounter with [Mr.] Mitchell from becoming volatile or dangerous to Mr. Mitchell." (*Id.*)

- Fulton County failed to "adequately train their deputies to employ safe, reasonable[,] and necessary techniques designed to prevent encounters with autistic and physically injured persons." (*Id.*)

- Fulton County failed to "adequately train their deputies in the safe, reasonable, effective, and appropriate modalities and measures of force to be used upon Impaired Persons." (*Id.*)

- Fulton County "permitted a custom of excessive force by permitting its officers to place a knee in the back of Anthony Mitchell for an extended period of time while he was physically injured." (*Id.*)

- Fulton County has "policies that permitted the officers to ignore the need for proper medical attention for Mr. Mitchell while he was having a mental health crisis and while he was [p]hysically injured in clear violation of established [c]onstitutional principles and case law." (*Id.*)

Ms. Swanson also asserts claims against the Grady EMS personnel, Grady EMS, LLC, and the SFFD Engine 13 team. Only Fulton County and its police officers moved to dismiss Plaintiff's Second Amended Complaint. Accordingly, the remainder of this Order focuses on the Fulton County Defendants.

## II.   **Legal Standard**

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert.*

*denied*, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination.").

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Twombly*, 550 U.S. at 555–56; Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely "remote and unlikely." *Twombly,* 550 U.S. at 556 (citations and internal quotations omitted). A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Twombly*, 550 U.S. at 556. A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment]

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

## III. Discussion

### A. Fulton County Police Officers

The Court begins its analysis by reviewing Ms. Swanson's 42 U.S.C. § 1983 claim against the Fulton County police officers. Ms. Swanson alleges that the officers violated Mr. Mitchell's Fourth Amendment right to be free from unreasonable seizure of his person through the use of excessive force during an arrest.[2] The Fulton County police officers argue that they are shielded from liability through the judicially created doctrine of qualified immunity.

Qualified immunity shields government officials performing discretionary duties "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once a police

---

[2] Ms. Swanson also alleges that Mr. Mitchell's "Fourteenth Amendment right to substantive due process precedent to the imposition of punishment or death in response to suspected criminal activity" was violated. (SAC, Doc. 47 ¶ 85.) However, the Fourteenth Amendment does not technically govern an excessive force case arising out of an arrest, though in some instances it may be applicable in addition to the Fourth Amendment. *See Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 845 (2022) ("The Fourth Amendment . . . secures '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . .' The prohibition against 'unreasonable . . . seizures' encompasses a bar on the use of excessive force in the course of an arrest. The Eighth Amendment forbids the infliction of 'cruel and unusual punishments,' and the Supreme Court has interpreted it to prohibit the use of excessive force against convicted prisoners. The Fourteenth Amendment provides that a State shall not 'deprive any person of life, liberty, or property, without due process of law,' and the Court has construed those terms to forbid the use of excessive force, too. So, under the Supreme Court's current framework, the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers 'those who exist in the in-between—pretrial detainees.'") (citations omitted).

officer establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the officer violated a (1) constitutional or statutory right (2) that was clearly established at the time of the incident. *Marantes v. Miami-Dade Cty.*, 649 F. App'x 665, 669 (11th Cir. 2016) (citing *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir.2009)). Here, there is no dispute that the Fulton County police officers were engaged in a discretionary duty when they placed Mr. Mitchell under arrest. The burden therefore shifts to Ms. Swanson to demonstrate that the officers are not entitled to qualified immunity.

### 1.    Qualified Immunity: The Constitutional Violation Inquiry

The Court first considers whether Ms. Swanson's allegations, when viewed in the light most favorable to her, create a plausible inference that the Fulton County police officers violated Mr. Mitchell's constitutional right to be free from the use of excessive force during an arrest. *See Patel v. City of Madison*, 959 F.3d 1330, 1338 (11th Cir. 2020) (providing that, upon the defendant officer's initial showing that his actions fell within the scope of his discretionary authority, the Court begins its qualified immunity analysis with the constitutional violation inquiry and then proceeds to determine if the defendant's actions violated clearly established law in light of the specific facts of the case).

The Fourth Amendment right to be free from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest. *See Graham v. Connor,* 490 U.S. 386, 394–95 (1989). To determine whether the amount of force used by a police officer was proper, courts

must examine the objective reasonableness of the force in light of the particular circumstances of the case. *See id.* at 396–97; *Saunders v. Duke*, 766 F.3d 1262, 1266–67 (11th Cir. 2014). Although "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat," *Graham,* 490 U.S. at 396,[3] the amount of force used by an officer carrying out an arrest "must be reasonably proportionate to the need for that force." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

To determine whether the force used by an officer to effect an arrest was objectively reasonable, a court must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)). The Supreme Court has established that, in balancing an individual's Fourth Amendment right with the countervailing need of police officers to use some force during the course of an arrest, a court must evaluate a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Other factors to consider are "the need for the application of force, the relationship between the need and the amount of force used, [and] the extent of the injury inflicted." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citation,

---

[3] *See also Nolin v. Isbell,* 207 F.3d 1253, 1258 (11th Cir. 2000) ("[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case.").

internal quotation marks, and numbering omitted); *Saunders*, 766 F.3d at 1267. While considering these factors, the Eleventh Circuit has "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders*, 766 F.3d at 1265 (citing *Priester v. City of Riviera Beach,* 208 F.3d 919, 927 (11th Cir. 2000); *Slicker v. Jackson,* 215 F.3d 1225, 1233 (11th Cir. 2000); and *Lee,* 284 F.3d at 1198).

Additionally, an officer who is present when another officer uses excessive force against an individual may be liable for failing to intervene on the individual's behalf. *Skrtich v. Thornton,* 280 F.3d 1295, 1302 (11th Cir. 2002). For liability to attach, a plaintiff must show "that the non-intervening officer was in a position to intervene yet failed to do so." *Hadley,* 526 F.3d at 1331. Whether the officer had time to intervene is a relevant consideration. *See Priester*, 208 F.3d at 925 (reversing a judgment in favor of a police officer on a failure-to-intervene claim after concluding that the officer "had time to intervene" but failed to do so).

Taken as true and viewed in the light most favorable to Ms. Swanson, Ms. Swanson's allegations show the following. Some time after the Fulton County police officers entered the Bojangles restaurant, they placed Mr. Mitchell in handcuffs with his arms behind his back and tied a Bojangles apron around his face, so as to create a makeshift hood. Mr. Mitchell had obvious injuries and was bleeding at the time. One of the Fulton County police officers then pressed a knee into Mr. Mitchell's back. After the officer pressed a knee into Mr. Mitchell's back,

all of the Fulton County police officers walked Mr. Mitchell out of the Bojangles, bypassed a police vehicle in which Mr. Mitchell could have been placed, and then placed Mr. Mitchell on the concrete ground in a prone position with a single officer's knee in his back and the Bojangles apron still tied around his face. All of the other officers watched as the single officer placed a knee in Mr. Mitchell's back and held Mr. Mitchell on the ground in prone position for thirty-four minutes. They watched but took no steps to intervene. The position in which Mr. Mitchell was placed compromised his breathing and apparently, in turn, his cardiac function.

There is no indication in Ms. Swanson's Second Amended Complaint that Mr. Mitchell resisted arrest inside of the Bojangles or failed to comply with the Fulton County police officers' orders once they handcuffed him and tied the Bojangles apron around his face. Similarly, there are no allegations that Mr. Mitchell resisted arrest outside of the restaurant, attempted to flee, or posed a threat to any of the officers. Therefore, the facts alleged here, if true, state a viable Fourth Amendment claim that Mr. Mitchell was subjected to excessive and disproportionate force. *See Saunders*, 766 F.3d at 1265; *Hadley,* 526 F.3d at 1329–30; *Priester,* 208 F.3d at 927; *Slicker,* 215 F.3d at 1233; *Lee,* 284 F.3d at 1198. Under the circumstances, no reasonable officer would view the force and method of detainment used here as permissible.

Likewise, the alleged conduct of the Fulton County police officers who passively stood by as another officer violated Mr. Mitchell's constitutional right for

thirty-four minutes would constitute a Fourth Amendment violation. Thirty-four minutes was ample time for any of the officers on the scene to intervene on Mr. Mitchell's behalf to ensure that he was able to breathe and was not in any medical danger, despite having the forceful body weight of their colleague on his back while his face was covered. *See Priester,* 208 F.3d at 924–25 (holding that "[t]wo minutes was long enough for a reasonable jury to conclude that Sergeant Cushing had time to intervene.").

The Fulton County police officers' arguments to the contrary do not change this Court's analysis in the context of a motion to dismiss where Ms. Swanson's factual allegations must be accepted as true, and there is no evidence before the Court that the officers were confronting active resistance by Mr. Mitchell in the thirty-four-minute period. The officers rely on *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000), *Holmes v. Hale*, 701 F. App'x 751 (11th Cir. 2017), *Crosby v. Monroe Cnty.*, 394 F.3d 1328 (11th Cir. 2004), and *Wordley v. San Miguel*, 567 F. App'x 719 (11th Cir. 2014) to argue that they used "de minimis force" against "an actively resisting suspect." (The Officers' MTD, Doc. 67-1 at 8.) The Court does not find this argument persuasive. First, two of the cases on which the officers rely (*Nolin* and *Crosby*) were reviewed in the context of a summary judgment motion, where defendants' presentation of the evidence could be considered. The other two cases (*Holmes* and *Wordley*), which were reviewed at the motion to dismiss stage, involve complaints drafted by pro se plaintiffs.

Case 1:21-cv-00996-AT   Document 75   Filed 03/18/22   Page 17 of 27


Second, there is no indication in Ms. Swanson's Second Amended Complaint that Mr. Mitchell actively resisted arrest after being handcuffed inside of the restaurant. Ms. Swanson's allegation that Mr. Mitchell was involved in a physical altercation with Bojangles employees *before* the officers' arrival at the Bojangles does not itself reasonably suggest that Mr. Mitchell refused to comply with the officers' orders upon their arrival or after the officers handcuffed him, tied an apron around his face, and a single officer first placed a knee in his back. The Fulton County police officers' suggestion that they were justified in initially restraining Mr. Mitchell does not excuse the continued use of force against Mr. Mitchell *after* he was restrained, not resisting, and did not pose a threat to the officers. *See Saunders*, 766 F.3d at 1269–70 (noting that the principle that the right to make an arrest includes some degree of physical force "has never been used to immunize officers who use excessive and gratuitous force *after* a suspect has been subdued, is not resisting, and poses no threat.") (emphasis added); *Galvez v. Bruce*, 552 F.3d 1238, 1245 (11th Cir. 2008) ("Use of significant force on an arrestee who would be considered by any reasonable police officer to be fully secured is 'wholly unnecessary to any legitimate law enforcement purpose' and therefore unlawful.") (citation omitted).[4] In contrast, in *Nolin*, *Crosby*, *Holmes*, and

---

[4] Therefore, *Smith v. City of Atlanta*, which is cited by the Fulton County police officers, is inapposite. No. 1:08-CV-2618B, 2009 WL 2589633, at *10 (N.D. Ga. Aug. 19, 2009) (holding that where (1) a "video demonstrates that Mr. Smith was not fully compliant, and supports Officer Zorn's contention that he was resisting Officer Zorn's control," (2) Mr. Smith "provided no authority that stands for the proposition that forcefully moving a handcuffed, but resisting, arrestee to the pavement is excessive force," and (3) Officer Zorn's conduct did not lie "so obviously at the very core of what the Fourth Amendment prohibits," Officer Zorn was entitled to qualified immunity).

*Wordley,* police officers' use of force to secure and control the alleged offenders was deemed acceptable because the offenders had not been handcuffed or were in the process of being handcuffed when an officer used force to gain control over them.

The Fulton County police officers additionally argue that *Nolin*, *Crosby*, *Holmes*, and *Wordley* stand for the proposition that where force is de minimis, it is constitutionally acceptable. Even accepting this as true, on the current record in this case, forcefully pinning Mr. Mitchell to the ground and covering his face with an apron for over thirty-four minutes cannot be said to be de minimis. This is particularly true when Mr. Mitchell's death from cardiac arrest followed soon after the officers' use of force. *See Patel v. Lanier Cnty.*, 969 F.3d 1173, 1184 (11th Cir. 2020) (stating in the Fourteenth Amendment context that "resulting injuries can be an indicator, however imperfect, of the severity of the force that caused them");[5] *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (stating in the Eighth Amendment context that "[t]he extent of injury may also provide some indication of the amount of force applied" in an excessive force case).

Additionally, the fact that Mr. Mitchell was able to leave the scene with his mother's assistance and return home shortly before dying at the hospital does not suggest that the Fulton County police officers could not have caused or contributed to Mr. Mitchell's death, as the officers argue. An arrestee does not have to

---

[5] The Fourth Amendment's § 1983 standard is analogous to the Fourteenth Amendment's standard. *Lanier Cnty.*, 969 F.3d at 1182.

experience force so extreme that he cannot leave the scene in order to maintain a § 1983 claim against the officer who exerted force against him.[6] That Mr. Mitchell was able to leave the scene instead points to the reality that the sequence of events, the officers' course of conduct, and medical evidence will all be relevant to the disposition of this case as it proceeds.

As pled, Ms. Swanson's Second Amended Complaint plausibly alleges that the Fulton County police officers used excessive force against Mr. Mitchell and that his death was caused or triggered by the officers' conduct.

### 2.   Qualified Immunity: The "Clearly Established" Right Inquiry

The Court now considers whether Mr. Mitchell's right was "clearly established . . . in light of the specific context of the case, not as a broad general proposition," at the time of the Fulton County police officers' actions, so as to have provided fair notice to the officers that their actions violated Mr. Mitchell's rights. *See Patel*, 959 F.3d at 1338 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).

A right may be clearly established by (1) case law with analogous facts, (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated." *Lewis v. City*

---

[6] *See Saunders*, 766 F.3d at 1270 ("[I]n the context of an Eighth Amendment excessive force claim, the Supreme Court has recognized that 'a defendant who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.'") (citation omitted).

*of W. Palm Beach,* 561 F.3d 1288, 1291–92 (11th Cir. 2009). Any case law must come from a "materially similar case" already decided by the U.S. Supreme Court, the Eleventh Circuit, or the highest state court in the state in which the case arose. *Terrell v. Smith,* 668 F.3d 1244, 1255–56 (11th Cir. 2012).

The Eleventh Circuit has held that "a handcuffed, non-resisting defendant's right to be free from excessive force was clearly established in February 2002," *Hadley*, 526 F.3d at 1333–34 (relying on *Lee*, 284 F.3d 1188; *Skrtich*, 280 F.3d 1295; and *Priester*, 208 F.3d 919), approximately seventeen years prior to the alleged incident in this case. Accordingly, the Court concludes that clearly established law put the Fulton County police officers on notice that their actions would violate Mr. Mitchell's clear right to be free from excessive force under the alleged circumstances of this case where Mr. Mitchell was handcuffed, not resisting, and lying in a prone position when one of the Fulton County police officers placed a knee on Mr. Mitchell's back and compromised his breathing and cardiac function for thirty-four minutes while fellow officers watched.

## B.   Fulton County

The Court now turns to Ms. Swanson's 42 U.S.C. § 1983 claim against Fulton County. A municipality or governmental entity may not be held vicariously liable under § 1983 for a constitutional violation committed solely by its employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693–94 (1978). In order to maintain a § 1983 action against a municipality, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *McDowell v. Brown*, 392 F.3d 1283,

1289 (11th Cir. 2004); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Specifically, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell*, 392 F.3d at 1289.

To establish that a municipality had a custom or policy that rose to the level of deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The inadequacy of police training may create § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

"Proof of a single incident of unconstitutional activity is [generally] not sufficient to impose liability" against a municipality. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)); *see Gold*, 151 F.3d at 1350–51. That is because a single incident is not so pervasive as to establish a custom; indeed, a custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

In this case, Ms. Swanson alleges that Fulton County's ministerial policies and systematic training failures led Fulton County's police officers to use excessive force against Mr. Mitchell when they encountered him at the Bojangles restaurant. As a result, Ms. Swanson maintains that Fulton County caused or was a moving force in its police officers' violation of Mr. Mitchell's rights.

### 1.  *Monell* Liability: The Constitutional Violation Inquiry

The Court has already held that Ms. Swanson sufficiently alleged that Fulton County police officers violated Mr. Mitchell's constitutional right to be free from the use of excessive force when they arrested him at the Bojangles. Therefore, the first of several elements necessary to maintain a § 1983 action against Fulton County (i.e., a showing that Mr. Mitchell's constitutional right was violated) has been met. *See McDowell*, 392 F.3d at 1289 (holding that an inmate's constitutional right to receive urgent care and treatment for a severe medical condition was violated and then moving to the next steps of the *Monell* inquiry, including determining whether the jail maintained a custom or policy that caused the denial of the inmate's constitutional rights); *Favors v. City of Atlanta*, 849 F. App'x 813, 817 (11th Cir. 2021) (finding an officer's use of deadly force in violation of the Fourth Amendment sufficient to meet the first prong of the *Monell* inquiry prior to determining (1) whether the government entity maintained customs, practices, or policies that constituted deliberate indifference to the individual's constitutional rights and (2) whether the customs, practices, and polices caused the violation of the individual's constitutional rights).

### 2.   *Monell* Liability: The Customs, Practices, and/or Policies Inquiry

The Court now considers whether Ms. Swanson sufficiently alleged that Fulton County maintained a custom or policy that constituted deliberate indifference to Mr. Mitchell's constitutional right to be free from the use of excessive force during an arrest. In her Second Amended Complaint, Ms. Swanson alleges that Fulton County is liable to her as the administratrix of Mr. Mitchell's estate under § 1983 because Fulton County: (1) failed to adequately train its police officers on how to safely engage with and/or respond to situations involving mentally impaired individuals; (2) maintained policies that allowed officers to ignore an arrestee's need for medical attention; and (3) maintained a custom and practice that permitted the excessive use of force against arrestees by allowing officers to place them in the prone position with a knee in their backs for prolonged periods of time. (*See* SAC, Doc. 47 ¶ 73.) Fulton County argues that Ms. Swanson's § 1983 claim against it cannot survive dismissal because her factual allegations do not support county liability under § 1983 and instead amount to speculative legal conclusions.

The Court first considers Ms. Swanson's allegations that Fulton County failed to adequately train its police officers on how to safely engage with and/or respond to situations involving mentally impaired individuals. In her Second Amended Complaint, Ms. Swanson does not describe Fulton County's current training practices regarding mentally impaired individuals. Instead, Ms. Swanson alleges in a conclusory fashion that Fulton County's training of police regarding the

handling of mentally impaired individuals is inadequate and does not offer any specific facts to support her allegation.

Ms. Swanson's Second Amended Complaint also contains no factual allegations addressing whether training regarding the handling of mentally impaired individuals is standard in law enforcement and in turn, whether Fulton County should have been aware of a need to train (or to improve its training) in this regard. Further, Ms. Swanson does not allege that Fulton County police officers previously (whether in specific notable incidents or systematically) used excessive force when engaging with mentally impaired individuals. She also does not allege that the officers previously (and/or systematically) used unreasonable or unsafe techniques when subduing or engaging with mentally impaired individuals. Instead, Ms. Swanson alleges, with no particularized factual support, that Fulton County was deliberately indifferent to Mr. Michell's constitutional rights by failing to specially train its officers on how to safely and properly interact with mentally impaired individuals. As pled, Ms. Swanson's allegations amount to mere generalized conclusions without specific factual support. These generalized allegations are insufficient to support a reasonable inference that Fulton County is liable for its alleged failure to train under § 1983. *See Twombly*, 550 U.S. at 555 (explaining that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Ms. Swanson's allegation that Fulton County maintained a custom permitting its police officers to place a knee in the back of arrestees for prolonged periods of time similarly amounts to a conclusory allegation with no factual support. Ms. Swanson does not allege that Fulton County officers engaged in a widespread practice of placing individuals in the prone position with a knee in their backs for a prolonged period of time. In fact, Ms. Swanson does not offer any examples of encounters (other than the encounter involving Mr. Mitchell) during which officers engaged in the application of force against an arrestee by pinning the arrestee in a prolonged prone position with a knee in the arrestee's back. Ms. Swanson instead alleges that Fulton County "permitted a custom of excessive force by permitting its officers to place a knee in the back of Anthony Mitchell for an extended period of time while he was physically injured." (SAC, Doc. 47 ¶ 73.) Ms. Swanson's allegation that Mr. Mitchell was individually wronged is insufficient to create a reasonable inference that Fulton County maintained a widespread custom allowing its officers to use excessive force through use of the prone position. *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1050–53 (11th Cir. 2014); *McDowell*, 392 F.3d at 1290–91 (finding no basis for *Monell* liability where inmate could not point to more than one incident where jail's alleged understaffing led to an inability to transport an inmate in need of medical attention).

Finally, Ms. Swanson's allegation that Fulton County maintained policies that allowed its officers to ignore an arrestee's need for medical attention is wholly conclusory and speculative based on the facts alleged at this juncture. Ms. Swanson

does not identify any Fulton County policies concerning how officers should address the emergency medical needs of arrestees. Ms. Swanson also does not describe any Fulton County policies or standard practices regarding the subject matter. A statement that certain policies exist, without more, is a mere conclusion, which does not give rise to a right to relief.

Because Ms. Swanson has not sufficiently alleged factual information in support of her generic and conclusory claim that Fulton County maintained customs and/or policies and practices that entailed and resulted in deliberate indifference to Mr. Mitchell's constitutional right to be free from the use of excessive force during an arrest, Fulton County's Motion to Dismiss is **GRANTED**.[7] Ms. Swanson's § 1983 claim against Fulton County in Count I is **DISMISSED WITHOUT PREJUDICE**.

The Court recognizes that Ms. Swanson may be in a position to amend her Second Amended Complaint to amplify her allegations and provide specificity in her factual allegations in support of her *Monell* claim against Fulton County. For that reason, the Court **GRANTS LEAVE** to Ms. Swanson to file a third amended complaint that fully addresses the pleading deficiencies identified in this Order, to be filed within sixty (60) days of the date of this Order. This deadline will not be extended.

---

[7] As Ms. Swanson's factual allegations are insufficient to support her *Monell* claim against the County, the Court need not reach and review the third prong of the § 1983 municipality liability inquiry.

## IV.   Conclusion

The Fulton County Police Officers Jennifer Jones, Victoria Whaley, Douglass Hardnett, and Desmon Lowe's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 67) is **DENIED**. Fulton County's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 50), however, is **GRANTED**, and Ms. Swanson's § 1983 claim against Fulton County in Count I is **DISMISSED WITHOUT PREJUDICE**.[8]

The Court **GRANTS LEAVE** to Ms. Swanson to file a third amended complaint, though she may well elect not to file a third amended complaint or pursue the dismissed Count. If Ms. Swanson chooses to amend, her third amended complaint must be filed within sixty (60) days of the date of this Order. Additionally, the Court **ORDERS** the parties to file a proposed revised scheduling order addressing any remaining discovery deadlines and the parties' schedule for summary judgment briefing within fifteen (15) days of the date of this Order.

**IT IS SO ORDERED** this 18th day of March, 2022.

**Honorable Amy Totenberg**
**United States District Judge**

---

[8] Ms. Swanson is advised that if she chooses to amend her Second Amended Complaint and proceed with her § 1983 claim against Fulton County, she must provide sufficient factual allegations to support each prong of the *Monell* inquiry, including the causation prong.